I represent the plaintiff in this case, and as the court knows from reading the briefs, Mr. Young brought a race discrimination claim and a retaliation claim against his former employer, and he relies upon the same three kinds or forms of circumstantial evidence to prove the elements of his prima facie case as well as to raise issues of fact regarding pretext. And in my limited time here, I want to focus on one of those categories of circumstantial evidence, which is the false explanation given by the employer for the decisions that they make. Well, let's just take a moment, because your description of what ought to be the prima facie case test seems to me to ignore longstanding Eighth Circuit law that in a bona fide RIF case, which this clearly is in my view, the plaintiff to satisfy the prima facie case must make what we call some additional showing, and therefore the prima facie case in a RIF situation is more rigorous, a legion of our cases say, than a normal, and you're arguing that the district court in applying the normal prima facie case was too strict, and we ought to be more lenient or generous, and I think you better tell me what, you better put your argument in the context of some additional showing on top of what a typical plaintiff has to make. Well, let me first say that this case has never been argued by either the defendant or us, or viewed by the district court as a reduction in force. Now, ultimately it became that, but the reduction in force cases were not, I don't agree that it's a reduction of force. I will agree that there are different forms. Going from 23 to 7 is not a reduction in force? Pardon? Going from 23 employees to 7 is not a reduction in force? It was not contemplated initially that it would be a permanent reduction in force. It doesn't have to be permanent. Under their contract, though. To be a RIF case in the context I'm talking about, it doesn't have to be permanent. But it was expected they would be hired back if in fact their business picked up, and therefore it's not a RIF in the sense that it was contemplated to be temporary, as it was in 2009. Mr. Johnson, I think that's true. Having my other career involved in some of these, that's always the hope, is that your business will pick up and you'll bring them back. I mean, they don't typically, I don't know if anybody ever fires just for the sake of firing. There's always the hope you can hire these people back. Well, in this case, the contract, the union contract, provided that they were not in fact fired for a year, that they had to be off work for a full year. So if they're brought back during that first year, it's not a RIF. And I think my contention, the distinction, that's just not consistent with common sense or our case law. Well, if the reason for a termination or a layoff or whatever at the moment is that the workforce needs to be reduced for business reasons, it's a RIF case. From the standpoint of the prima facie case plaintiff needs to make for employment discrimination cause of action. Well, in looking at the elements of a prima facie case, Judge, there are some of the cases, more recent ones say, to make a prima facie case, you have to show that they were a minority, which is undisputed, there was an adverse action, which is undisputed, and that the adverse action took place under circumstances from which a retaliatory. I know, but that's not a RIF case. I mean, I wrote one of the first cases I had that the prima facie case is supposed to be a flexible test. In that regard, I agree with you. But the flexibility means it's a tougher test in a RIF situation because there's no inference to be drawn from the perspective of discrimination. When an employer has to fire somebody and chooses X instead of Y. I agree. All right. So that's why some additional showing of discriminatory selection is needed. And I agree. All right. Well, I don't see it here. You've got a typical not very strong array of pretext arguments that you say ought to be enough to squeak past the prima facie case, the standard prima facie case. I don't see anything that begins to climb the RIF mountain. Well, I, again, rely upon the Reeves case, the Supreme Court case that says a false explanation can be. . . That was post-trial. Reeves has nothing to do with summary judgment. But it goes on to say that a reasonable trial error fact can infer from a false explanation logically because it is the employer who puts forward the explanation. In this case, the explanation was that we terminated people based upon their classification, not based upon their seniority. My contention is that that fact is false and that a reasonable jury could infer from there that they're dissembling or giving a false reason in order to cover up a retaliatory or discriminatory motive. And that the reasons why some of the people were, and that's what I wanted to focus on, was on the decision in May of 2011 to lay off my client and to retain other employees. So the question is, was the basis that they relied upon, the employer, a true basis, legitimate, or was it a false reason given to cover up a wrongful motive? And in the context there, I think it's important to understand, and I compare that to the October of 2009 layoff in which my client was not laid off. And the context there is after he's not laid off in October of 2009, he files the state court lawsuit that was pending during all of this litigation. He then gets laid off in May of 2011. He said, you changed your procedure, you didn't follow your policy in 2011 in retaliation for the lawsuit that I filed against you in 2010, and that's shown by the fact that in 2009 he was not laid off. Well, the district court found that there, Judge Fenner found that there was, I don't know, too much, but it was such a lengthy time in there that it carried very little weight. And then it would be one thing if he were laid off and he was the only one laid off, but again we get back to this riff, he was laid off with a whole bunch of other people. That's correct. And then the question is, was he laid off according to seniority, which is what the union agreement provided and the testimony. No, it provided two alternatives. It talked about also the basis of skills. I don't remember the exact language of the skills. Ability and experience. And then so the testimony was we, prior to October of 2009, we always strictly laid off by seniority. Did he grieve? Pardon? Did he grieve? He grieved it and then he withdrew the grievance after he filed the lawsuit. Well, then don't argue the collective bargaining agreement. Well, that's a written, again, that's a written agreement, and the testimony was that we strictly laid off by seniority. That's what their agreement provided. But they said we didn't. That could have been pursued in the grievance. That's true, but the grievance. There's no inference of racial discrimination from an action taken that one can view as inconsistent with a collective bargaining agreement that wasn't invoked. Well, I don't agree. I agree that my position is the union agreement is a written policy, which failure to follow a company's own written policy, again, is a kind of circumstantial evidence, another category that this Court has recognized as being an element to prove pretext or circumstances giving rise to retaliation or discrimination. And so really it is a combination of the fact my contention is they were not following their written policy or their prior procedure when they laid off in 2011. And the reason that they, that that explanation then is a false explanation, an explanation that's unworthy of belief, and if you don't believe it, the jury can say, well, they didn't give us a real reason because they're trying to cover up a wrongful motive. Again, this is, as the Supreme Court pointed out in Reeves, this is a typical way of proving discrimination because rarely does an employer ever admit that there was discrimination. They put forward a legitimate business reason. The plaintiff then has the burden of proving that that wasn't the real reason, one way of which to show, well, that reason is false. It can't be true. Now, this case, the 2009 layoff is important because we can, their, the company's position was the layoff in 2009 was by classification, not by seniority, so that we didn't change the rules in 2011 after you'd filed the lawsuit. A jury I contend that's a disputed issue of fact because a jury could find that, in fact, the layoff in 2009 was by seniority because all the people who were laid off were below my client on the seniority list. Let me ask this. The district court said that there was, your comparators, different classification skills, duties, so forth, and they had changed, 2009 job change was too remote. But then it goes on to say you had no pattern evidence, no management confrontation, no similar situated treated differently, and no one was upset at the plaintiff. In other words, typically in this case we see somebody's said something to him or mad at somebody or not getting along with management or something, and the district court concluded that it was just speculation. So what's your response to that? My answer to that is those are other ways, other kinds of circumstantial evidence that have been acknowledged to be ways to show pretext. But my contention is that is not the only one. It's not limited to that. In fact, the judge, I think, district court judge limited it to different treatment of similarly situated employees. And in some cases this court made clear that that's just an example of a way to show circumstances that can lead to an inference of retaliation or discrimination. That's the most recent language that this court has used. It's very broad. And one example could be the examples of similarly situated employees, all the other things that the district court pointed out. They are not exclusive, as the Supreme Court said in Reeves. Reeves and in Reeves focused on the circumstances that you rely on saying, okay, we don't have all of that. Well, primarily there's a false explanation. There's a failure to follow its own written policy, which is the union agreement. And I contend that there was different treatment of similarly situated employees. I have all of those, but in my argument today. And that's based on seniority, right? Well, it has to do with classifications. The company's explanation was in 2011 we kept the most highly experienced and able employees because they could do everybody else's job. The testimony was that what they call the layer-out fitter welders, who had the highest wage category, paid the most, they could do everybody else's jobs. Therefore, the company said those are the people that we kept. My contention is that that explanation doesn't apply in this case because the people who were retained instead of my client were all in wage group 3, not wage group 1. So they were all similarly situated because they were all in the same wage group. I thought they were doing jobs that the plaintiff was not certificated or experienced in doing. Well, that's a disputed issue of fact. The company's position is that the— It doesn't matter. I mean, is it disputed that that's not a genuine belief of the employer? Yes, yes. And what's the basis? Because the only basis for that is the union steward saying the other people in the wage category could perform the duties of a burner, which is the position my client had. My client testified under oath as well. It doesn't matter whether they could do his job. I mean, the question is could he do theirs? That wasn't the explanation. Actually, the explanation is that they could do his job and he could not do theirs. And so the dispute is they could not do his job. And he testified they were not trained to do the burning. They never did the burning. So a jury could—again, that's a disputed fact. Well, there was also some evidence there was no burning anymore to do. His job was—there wasn't the work there. Well, that— Am I wrong about that? Yeah. Well, there was no—that was not the explanation. The explanation was is that the people they retained could do the burning. And, therefore, if the inference is there had to be burning duties, otherwise, again, that explanation would not be believable. If, in fact—if their argument had been all the burning duties were outsourced to someone, then that would be a different explanation that I would have to show as false. Their explanation was is that the people we retained had the ability and the experience to do the burning. And so that's why I focused on that. As the Supreme Court says, when you're looking at false explanations as circumstantial evidence, you have to look at what the employer gives as the reason because they're in the best position to know why they did what they did. So I see I'm on my rebuttal time, and so unless you have any other questions, I would like to reserve whatever time I have. Okay. Thank you, Mr. Johnson. Good morning, Mr. Wood. Good morning, Your Honor. Marks Wood for the employee, if it pleases the Court. On this issue most recently discussed here in terms of the burning and the explanation, I think that the company's argument, statement of reason, is that in these very difficult economic circumstances, it wanted to retain the combination of skills that was most efficient to get the work done. And by definition, you have to have welders and you have to have layout people. You have to have material handlers and those kind of job classifications. Now, Mr. Johnson makes a point that he doesn't argue about the fact that the plaintiff couldn't do the job of some of these other people, but he argues that a couple of them couldn't do his job. And the only evidence that he cites for that is his own affidavit. And the affidavit says, according to Mr. Young, that none of these other people were ever trained to be a burner, nor had he ever seen them function as a burner. He didn't say they couldn't do it. And the easy response to that is twofold, I think. Number one, Mr. Young himself, in January of 2007, voluntarily changed his job classification from a layout fitter welder to a burner. There was a bid posted on the bulletin board, and he decided of his own free will to bid for that job and take a lower pay. Now, there is no evidence in the case that Mr. Young had ever had any training to be a burner prior to that, nor is there any evidence that he had ever done any burning prior to that. So for the same reason, it's logical to conclude and infer that other people could do the burning job if he wasn't there.  Well, it's basically using a torch of some type to cut steel. To cut steel? To cut steel. They're frequently, I think, cutting the base plates that maybe go on the end of a column. But it's a burning instrument, a torch instrument that cuts through steel, and that's the job. How is that distinguished from something called a welder? Well. Just the opposite? I burn, they weld? I hadn't thought of it that way. I don't think it's you don't use a welding rod, you don't have all that equipment. You're simply directing something and cutting it. So I think by the fact that the union contract has specific requirements to be a welder and not to be a burner, there's certainly a substantial skill difference. And, you know, conceptually, one, you're cutting two things apart, the other, you're putting them together. So to that extent, maybe there's some correlation. Do most of the people in the industry that eventually become burners start out as welders? Oh, I don't think there's any evidence of that at all, and that would be a very. Start the other way around, maybe? I think maybe. You graduate up to welding? Yeah, I think it would more likely be the other way around if there's any correlation there at all. Did your client argue in the district court it's a RIF case? Your Honor, I don't think we put it in those terms. So you weigh my view of the case? I don't think so. I don't think we used the word RIF. But on the other hand, we argued that he had to show that others were similarly situated and treated differently. Well, that's typical. That's the standard case. Well, I think Mr. Johnson's arguing for an even broader standard. Well, I understand that, but he's not. Okay. But to answer your question, we argued that there was no evidence that similarly situated people, the rigorous test that applies there, there's no evidence to support that any of them were treated differently because there were no people similarly situated. Mr. Young, in May of 2011, was a burner. He was the only burner. And he mentioned specifically two or three other people. Mr. Hoard was a material handler, and the record will show he has to operate special machinery to punch holes in steel beams. Mr. D'Isato was a welder. He has to be AWG certified. He has to weld. He can't be away from welding for more than six months. Let me interrupt you a minute. Yes. Judge Loken raises a good point, and then you took it away. So my question is, that's not what the district court said. The district court refers to these as reductions in force on pages 6 and 7. October 2009 reduction in force, and refers to defendants' reductions in force in May 2011 reduction in force, and then analyzes each of those and then goes on. It seems to me and my recollection is the district court treats these as reductions in force, but I guess that's not what you were arguing. Well, no, I agree with what you just said, Your Honor. I think the question from Judge Loken was whether we had argued specifically for a reduction in force prima facie case conceptualization in the district court. And we certainly argued that there had been massive layoffs, two of them, in fact, in this company. The economic circumstances are a major part of this case, obviously. What I meant to say to Judge Loken was, I don't think we said to the district court, there's a special prima facie case you have to apply because this is the reduction in force. We asked the court to apply a prima facie case on the fourth prong that said they have to show similarly situated, a rigorous test, as the court notes, similarly situated people were treated differently. You're saying that at least the district court picked up that these were reductions in force as a matter of fact, but you never argued that that made any difference legally. Is that what you're saying? I am, to the extent that the reduction in force prima facie case is stricter on the fourth prong than requiring a showing that similarly situated people were treated differently under a very rigorous standard. If it's stricter than that, no, we didn't argue for that because we don't think they came close to showing the similarly situated prong. Now, the court, the district court opinion, obviously that's different. He did refer to reduction in force, but I was just trying to be perfectly candid. The typical fourth prong in a discharge case is who replaced it. Correct. And that's nonexistent in a RIF case. So you've got to look around, and I guess you argued that, okay, well, let's look at who, let's compare him to who was retained. Yeah. And I think that's a legitimate focus. Yeah. I mean, everything he says, by definition, has to do with him compared to somebody else. I mean, people were, they admit we had, they don't challenge the fact. Well, it doesn't have to. I mean, there are cases, direct evidence cases being the most obvious. No, no. In this particular case, when you're talking about a layoff, then obviously, because they don't challenge the economic circumstances the company faced. They don't challenge the need for the layoff. In fact, they admit it. So then the question, okay, people are going to be laid off. Who goes? And so that's, by definition, a comparison situation. He also talks about pay, and I don't want to lose this point. He says, in March of 2011, I was paid less than the other people in my wage group, and that that was an adverse action or evidence of discrimination. But what that ignores is the fact that in 2007, he voluntarily took a job for $16.47 an hour at the bottom of the wage group three pay level. I mean, nobody pushed him to take that job. He took that job. The other people that he wants to later say I was paid less than them, those people had been in wage group three, presumably, for years. In your view, is that a freestanding claim? In other words, if the layoff-slash-discharge was not a violation, do we still have to address the wage claim? No. I guess counsel can address that in a rebuttal. It's peculiar to me whether that's a freestanding claim, and if so, what does it entail? I don't think they're arguing it as a freestanding claim. I think they're trying to use it on pretext, and they're trying to say it's an adverse action. But taking a snapshot of wages being paid in March of 2011, I disagree with the district court here. I don't think there's any adverse action. There's no action taken by the employer at that point. The wages being paid in March of 2007 are a function of the wages that were being paid in 2007 and years before because the other people in the wage group could well have had merit increases over the years. And in February 2007, he voluntarily goes right to the bottom of the wage scale for that. Well, but I think his argument is that he was promised by somebody above him in the chain that if he goes down there, that he would then be, within a short amount of time, be bumped up to what he was making as a welder. Which sounds like a contract claim to me rather than some kind of discrimination claim. But in his state court lawsuit, which you can find in 148 in the transcript, he didn't allege that somebody had promised him before he went down. He said, I went down and took the job, and then I asked for an increase, and they told me I could have one. In the federal case, in this case, by the way, the state court case was dismissed for want of prosecution a few months ago, because I think in the record it might say that it's still pending. In this case, he didn't allege anything about this promise to pay him more. The only thing he alleges is he was not given equal pay increases. What does that mean? Well, obviously comparing himself to somebody else, nobody, and this is in the record, nobody in this company got a merit increase from January 1, 2008 forward except for Mr. Freed. He's the only one. He's a shop steward in a totally different situation and not mentioned in their brief in any context. There aren't any merit increases during any period of time relevant to this case. So the fact that he's paid less in 2011 is simply a function of where he stood with relation to those people when he went down to the burner job in February 2007, and certainly some of them would be above the minimum because they'd probably been in the job for years and years and had merit increases. So it's a totally bogus point. Now, but as I was saying, he didn't allege in the federal case this promise. And I'd also note, Your Honor, this promise supposedly was made in February 2007, five years before he filed this lawsuit, two years before he filed his first EEOC charge. So that, and in his brief in this case, he doesn't allege that the alleged failure to give him his raise back in 2007 is an adverse action or is a basis for pretext. He alleges, I was paid less in March of 2011. That's what his brief says. His brief doesn't talk about this promise that they made to me earlier as an adverse action at all. Throughout the plaintiff's arguments in this case is the theme that because people are in the same wage group, they're treated the same way or they have to be treated the same way, they have the same job. The wages have really nothing to do with the actual job they're doing and the company's need for whatever skills they have. And I think the record is replete with evidence, as the district court noted. Other people that they mention in their brief that he wants to compare himself to had skills that he didn't have. He admits he doesn't even contend he had those skills. He was no longer a qualified welder. He doesn't contend he could be a material handler, which is a lot more than it sounds. You have to be able to operate sophisticated forklifts and you have to be certified under the union contract. He didn't contend he could do any of that. The company's fighting for its survival, as is obvious by the fact that a year later, after the May 11 layoff, they got five people in the shop, five production people. They used to have 25 or more. So I see my time is up and I'll conclude my comments with that. Thank you. Thank you, Mr. Wood. How much time is Mr. Johnson? One minute, Your Honor. Okay. Let me quickly address then the standard of the prima facie elements. One of the difficulties that the court had is there are more than one adverse action, one of which I misspoke. The judge, in his opinion, does talk about a reduction in force. He also talks about a pay claim and then a return to force or being called back. And so the district court applied the same prima facie element standard to all three of those. My contention is, is that the proper standard the court should have applied is the one this court applied in 2010 in the Lake case. And the fourth element was circumstances giving rise to an inference of discrimination. For example, similar situation. Is it your view that we have to address the rage differential separately? Yes. That's a separate claim. And the district court found. So pled? Yes. As a separate adverse employment action under both retaliation and discrimination. It was an adverse employment action. And the judge, again, applied the same standard to each kind of adverse action. What would the relief be on that claim? It would be the difference between what he was promised. His contention is I only went down because I relied upon what was told by me, by the chief operating officer, Mr. Neal. And furthermore, the district court never analyzed statute of limitations because Mr. Young also said I kept asking him that periodically up within the statutory time limit. Well, having done this when I was trying cases, why is the allegations, if there is, Mr. Woods says, in the state court, not admissions against interest or judicial admissions, about that he didn't get that representation about getting paid until after he had taken the job? Well, the claims he makes in the state court are under state law. And I don't think he's bound by making the same claims. Well, a statement of facts made in another litigation, no matter where it is, are... Judicial. Judicial is topic. Yeah. Well, but that is not that he made that claim. It's that he did not make the claim. It's an argument by silence, merely because he didn't make the claim. I agree if he had made a statement in state court, he was going to be bound by it. But he never made the claim. The argument never made the statement. He never made a claim. And therefore... Well, we'll just have to look, see what he said. Thank you. Okay. Thank you. Thank you both. We will consider your arguments and your briefs and your oral arguments, and we'll be back to you as soon as possible. Thank you.